Good morning, Your Honor. It's Richard Bulwer from the Federal Defender's Office on behalf of Kevin Bibbins. Your Honor, and I'd like to reserve some time for rebuttal. This case presents, I think, a clear example of an magistrate court applying a wrong standard in a written decision. Your Honor, there is not anything about any imprecision in the decision that was done here. The court in this decision essentially applied a preponderance standard. It used the word, more consistent with, which as this Court is well aware, is a preponderance standard. It's not You don't think the magistrate judge understood that he had to find him guilty beyond a reasonable doubt? Your Honor, this presents an interesting dilemma. Do I want to stand up here and question the competency of a magistrate judge? No. What I have, Your Honor, is a detailed written decision that clearly belies the application of that standard, that the decision language, Your Honor, and it wasn't a short decision. It was an 11-page decision written on a petty offense case. And there's clear language, Your Honor, that there's an application of a preponderance standard. I understand the Court's dilemma as well. I know Judge Foley very well. Could you point out the page and line number that you say sustains your suggestion? Certainly. It is an ER-226. I have the decision here. What page of the decision is it? The page of the decision, I believe, is page 10. If you look – I'm sorry. I won't give you time. Page 10. My decision ends at page 5. I'm talking about the magistrate court judgment. Oh, magistrate. Pardon me. Okay. I got you. All right. Page 10. Just above, Your Honor, the conclusion heading, if you look at the last two sentences, first, such conduct is inconsistent with an attempt by Mr. Bittman to protect his leg or support himself. This conduct is more consistent with an intent on the defendant's part to resist the ranger's attempt to place him in handcuffs. All right. So what's wrong with that? Your Honor, more consistent with is not a beyond a reasonable doubt standard. That is a preponderant standard. More consistent with is more likely than not. That is not a beyond a reasonable doubt standard. I think he uses the word consistent twice. So I don't think that there's any doubt about the fact that he was using a comparative standard. He was saying which story is more likely. That raises another issue, which I have not reached on, which is about the lack of consideration of the legal necessity defense that was specifically raised at the Petty Offense trial. And we also have in a very, again, in a detailed decision, the Court completely ignored that defense and did not actually consider it. How do you know that? Your Honor, I think it can be fairly reasonably inferred from the fact that the Court wrote a detailed decision. The Court addressed all the arguments that were raised by counsel in this decision. We have a lot of law that says that we presume that judges hear all the evidence that's presented and think about all the law that's applicable, whether they detail it or not in their written decisions. Is there some evidence that you can show that he did not consider the necessity defense? I think, Your Honor. Other than it's not being mentioned specifically? Certainly, Your Honor. The evidence is, if you read the conclusion about the fact that Mr. Bivens' conduct was more consistent with resistance than with specifically intending – I'm sorry, more consistent with resistance than protecting his leg, that ignores the necessity defense, because the necessity defense in the terms of the analysis says I have committed the conduct, but I committed the conduct for a specific purpose. That analysis ignores the fact that he could still – the Court could still have found that my client resisted, but nonetheless acquitted him on the necessity defense if it found that he did so after having chosen a lesser of two – of going through the elements of the necessity defense. Right? So that analysis reflects a lack of consideration, because if he had in fact considered it, he would not have reached this conclusion of having to choose between the intent to resist or the intent to protect the leg, because – Let me ask you this. I can't remember just off the top of my head, and I probably should have checked this, but is the magistrate – in these kinds of cases, is the magistrate judge required to do – make findings? There is no requirement, Your Honors, about findings, but as the Court is aware, under Federal Rule of Criminal Procedure 23.C, in a bench trial, there can be a requirement by the parties – by the defendant for written findings. And did you make – did you do that here? We did not make that, Your Honor, but I think it was fairly clear, and I knew Judge Foley's practice for the most part was to issue written decisions. So I didn't explicitly ask for that. But what I – but what I think is important is if you consider Rule 23.C, clearly the criminal justice system and the courts contemplate review of written decisions by district court judges and magistrate judges. Otherwise, there would be no requirement. Could he have just done everything orally right after the presentation of evidence and considered all the evidence, all the arguments? He could. He could have done that, Your Honor. And I think that's actually an interesting point, because the government's cases which talk about the imprecision of language and ambiguity are an attempt, I think, by this Court, like this Court in, I think, Cochaballa's, if that's how you're going to pronounce it, was attempting to protect magistrates when they make oral decisions, when they stand up and when they're at that moment doing something sort of off the cuff and making an oral expression. In that instance, there is, in fact, greater, I think, leeway given to a court. But this Court indicated in Cochaballa's that that type of ambiguity, while it's permitted in the context of an oral expression of a decision, is not what you would expect in a written decision. Let me ask you this. You raised one other issue that you haven't talked about, which is that you argued that the resisting requires specific intent. That's correct, Your Honor. Is that right? Yes. Now, did he apply specific intent to this? Did he make a finding of specific intent here? Your Honor, I think that that was from the language. I don't think that that is what he found, because he could still have found that my client pulled his arms out of the ranger's hands, but that that didn't rise to the level of specific intent of resisting. That, Your Honor, is also the basis for my insufficiency argument in my briefing, that you can – it was undisputed that my client had a broken leg. It was undisputed that my client told him he had a broken leg, and it was undisputed that at the time they told him to spread his legs and grab them, he said that leg is broken. And so you could – I'm sorry. I would like to ask – direct your attention to 36 CFR 2.32A1 on the issue of whether resisting is indeed a specific intent crime. The statute prohibits, quote, threatening, resisting, intimidating, comma, or intentionally interfering with a government employee. Is it your view that that intentionally is simply misplaced and should be in front of threatening so that it would read, intentionally threatening, resisting, intimidating, or interfering? Does intentionally modify every one of those verbs? I think that, Your Honor, that intentionally modifies that specific verb in the context of impeding, because if it – It modifies interfering. Interfering. But he was convicted of resisting. I understand that, Your Honor. I think that – Is it your argument that the adverb intentionally modifies not only interfering but also threatening, resisting, and intimidating? It is my view, Your Honor, that that is implied in the statute and that this Court in the particular environment under 232.A1. Do they discuss that issue in Butcher? Your Honor, in that – in Butcher, I think they simply state, and I'm reading from page 934 of Butcher, section 2.32A1 requires proof of specific intent, Your Honor. So – It's an interesting statute because, you know, the regulation says – starts out by saying, I think it's interfering. Right. And then it gives ways in which interference can be accomplished. Right. In Butcher, it says – it says specific intent to interfere. I think part of the difficulty, Your Honor, going back to the point about intentionally, is that I think interfering and impeding, which is also – which are also verbs in the statute, can be confusing. And the courts have attempted, I think, to try to make sure that specific intent is  Otherwise, you could have – So is it your argument that the magistrate judge here used basically – treated this as a general intent crime? I think he treated it as a general intent crime, and that also was the problem with in terms of the necessity defense, because the necessity defense also goes to the specific intent. And that's why you have insufficiency here, because the necessity defense would have applied not just in terms of general intent, but of the specific intent of Mr. Bibbins. Let me ask you this. If he – if he did treat it as a general intent crime, was there harmless error? No, Your Honor. There was not harmless error. I hear. Your Honor, because in this context, you have evidence to indicate that there would have been alternative motives connected with the action that was the basis for the decision. Right? So the broken leg, which was indisputed, the fact that he said the leg was broken, which is indisputed, could have provided a basis for another intent apart from the specific intent. Because as the Court is well aware, general intent is just about the conduct. But in this case, there was an alternate basis for the conduct that would not have been – that would not have supported beyond a reasonable doubt finding for a specific intent to resist. Thank you. I'll give you a minute for rebuttal. Thank you. There are two tickets. Go ahead. May it please the Court. Roger Yang on behalf of the United States. This Court should affirm the District Court's convictions based on two reasons. First, a Toyota pickup truck remains a Toyota pickup truck regardless of whether it's towed or whether it's self-propelled upon Nevada highways. Therefore, the ranger was completely within her rights to pull Mr. Bibbins over for having an obstructed license plate. Second, under a sufficiency of the evidence review, drawing all inferences in favor of the government, the magistrate court and the district court found that Mr. Bibbins forcibly freed his arm from two rangers and that that was freed his right arm from two rangers and then twisted back toward those two rangers with a clenched fist. Based upon that, there is ample evidence to sustain the conviction. In addition, the district court and the magistrate court both implicitly rejected any idea that this was an accident or that this was somehow a medical necessity. So there is a couple of legal issues along the way. That's So let me just ask you this. Did the magistrate judge treat this as a general intent crime or as a specific intent crime? And what does the statute require? In the government's view, the offense is a specific intent crime with regard to interfering, that in order that accidental or negligent interference with officers is not, is not a general intent crime. With regard to the other actions, those are general intent actions, resisting, threatening, those types of actions. Now, you didn't make that argument in your brief. You seemed to acknowledge that it was a specific intent crime. Well, the government's position is basically that regardless of whether this is a specific intent crime or a general intent crime, the magistrate court and the district court both examined the defendant's actions and found them inconsistent with any defense based on specific intent versus general intent. That is, that this was not an accident, that this was not just the defendant flailing about. This was the defendant's intentional act to resist arrest or interfere with the officer's ability to arrest the defendant. That's why the government has, you know, did not address specific intent versus general intent, because the magistrate court's findings and the district court's specific finding that Mr. Bivens' actions are inconsistent with him trying to avoid placing weight on that leg, that was sufficient under either a general intent or specific intent to show that Mr. Bivens' actions were specifically to resist arrest or to interfere with the arranger's ability to arrest him. And going back to the magistrate court's findings, the magistrate court specifically found that the defendant throughout this period was, you know, combative and resistant to the officers. When Ranger Shanzak first pulled him over, his response to her telling him that he has an obstructed plate is, you don't need a CMI in an expletive plate. And then when she asked him about whether he has weapons in his vehicle, a completely legitimate law enforcement concern, he says, why are you asking this? I just want to leave. Even during while the officers are asking for him to come back to the back of his car, he pulls out what appears to be some black object. The ranger tells him to drop it or drop it, but instead he places it in his belt. He refuses to raise his arms. He, when he gets back to the tailgate, he grabs onto the tailgate. When told not to grab onto the tailgate, he continues grabbing onto the tailgate. This was a progression of events that demonstrated that the defendant really did not want to get arrested on this arrest warrant. And then once the officers reached him and actually placed hands on him to bring his arms back, that's when the defendant first twists one way with clenched fists, then twists the other way, freeing his arm from two rangers, and then the rangers disengage basically because he's freed his arm. They yell taser. They tell him to get on the ground. And then he starts twisting back with a clenched fist toward two rangers. Of course, these actions, like the district court found, are completely inconsistent with accident or negligence or some sort of just trying to avoid putting weight on the leg. And the government actually does dispute, has a dispute regarding how much weight the defendant could put on his leg. And that came out through the testimony both of the defendant and of Dr. Rosen, who testified consistent with the defendant's medical records that, in fact, his physical therapist was encouraging him to put more weight on that leg. And actually 17 days later, he was cleared to put full weight bearing on that leg. That means he could walk without any assistance. What do you say to Mr. Boulware's claim that the magistrate judge erred by not considering the necessity defense? Your Honor, first of all, the magistrate judge went through the medical evidence extensively. In Excerpts of the Record, Volume 2, page 226.5, the magistrate judge goes through the medical testimony. But first of all, the magistrate judge is completely within his discretion to reject that defense if it is not made. This is not the case. But he doesn't say that. That's correct. He doesn't say anything. But it is implied, based on the magistrate's findings, that the rangers were credible and that the ---- You know, if this were a jury trial case and the defense had raised it in a jury trial, you would have on the ---- the judge, in order not to give that instruction, the judge would have to say, look, these facts do not add up as a matter of law to a necessity defense. You're not getting the instruction. That's correct, Your Honor. So why doesn't that same sort of principle apply in a court trial context, where we don't really know if he considered it or if he did consider it and said, this doesn't add up to necessity? Your Honor, because the factual findings of the magistrate implicitly reject the defense. First of all, the medical necessity defense is an objective standard. It's not a subjective standard based on what the defendant believes. Even in the defendant's trial testimony, basically over a year after he broke his leg, the defendant still claimed he had a broken leg. From a subjective point of view, that's, you know, this was a post hoc justification that the magistrate judge and the district judge both rejected. But from a legal necessity point of view, the defendant had reasonable legal alternatives. He could have said, look, I have pain in my leg. If you ---- what you're asking me to do would jeopardize the structure of my leg. And the rangers testified that they would have then offered medical assistance and given him medical assistance. But he told them that he had a broken leg. He had a broken leg. That's a precise problem, Your Honor. He never claimed he had pain. He never claimed that it would jeopardize his leg. You have to say I have a broken leg and I have pain. Well, he could have sat down and demonstrated to the rangers that, yes, in fact, he could not or he felt that, you know, his leg would be in jeopardy. But he didn't do that. Even after he was tasered and actually brought into ---- arrested, he did not ask for ---- he refused medical attention. And, in fact, his medical records later showed that there was actually no danger to his leg. From an objective standard, this was not required in order for the defendant to avoid pain or any damage to this leg. His actions in resisting the rangers had no causal nexus with the, quote, harm to be avoided. In addition, with regard to legal necessity, the defendant simply cannot make that out on an objective standard. Therefore, both the magistrate judge and the district judge recognized this for what this was, a post hoc justification for the defendant's actions, intentionally resisting and intentionally interfering with the ranger's ability to arrest him. Let me ask you this. Do you think threatening and resisting and intimidating all in ---- all encompass some purposeful conduct? Your Honor, I believe they would ---- they all in ---- they would all fall under general intent in the sense that ----  That's not my question. Threatening, does that encompass purposeful conduct? Yes, Your Honor. I mean, how could you threaten somebody without it being purposeful? I'm at a loss for that one. But, yes, these are purposeful actions. Or intimidating. How could you intimidate somebody without essentially intending to intimidate them? Your Honor's correct. These are all purposeful, intentional actions as enumerated by the statute. There is, under a sufficiency of evidence standard, drawing all inferences in favor of the government, there's ample evidence in this case to sustain both the convictions. Thank you. Okay. Very briefly, Your Honors. One, I think that it was clear that there is no alternative to my client in terms of the auctions. He told them that he had a broken leg and he told them he had crutches in the car and they told him to keep walking. There was evidence, expert evidence, that indicated that if he was walking with a limp, that would indicate that he was not full weight bearing. The other thing I think is clear is that the magistrate court's analysis reflects the fact that he didn't consider the necessity of defense. Say again? The magistrate court's analysis reflects the fact that the legal necessity of defense was not considered. And what I mean by that, as I indicated previously, is that the magistrate court's decision does not reflect an understanding that he could have found that my client, in fact, had resisted, but nonetheless found by a preponderance that that resistance was legally necessary. There's nothing in the decision to reflect that type of analysis. In fact, it's the exact opposite. The use of the word consistent reflects an understanding that he had to choose. But when you have an affirmative defense, you don't have to choose between whether or not the person did the conduct specifically or not. You have to – you can choose or detide that they've done the conduct specifically, but nonetheless equip them in terms of the affirmative defense, Your Honor. So on that basis, I think that it's clear that he did not consider it. I'm not going to get into the towed vehicle. I think that's fairly brief in terms of the Nevada statute. Thank you, Your Honor. Thank you. Thank you, counsel. No further arguments.
judges: Noonan, Paez, Bea